# Sabel & Sons *v.* Savannah Rail & Equipment Company.

## *Bill for Accounting by Partner.*

1. *Partnership; how created.*—To constitute a partnership there must be a valid agreement to enter into the partnership; and this contract must be executed.

2. *Same; contract.*—Unless something is done, or unless the agreement from its nature operates *in presenti,* the contract is executory, and either party may decline to carry it out as a partnership agreement, though liable for specific performance or for damages at law 'in proper cases.

3. *Partnership; when not created.*—Two parties agreed that whichever one of them should have the opportunity to do so would purchase certain property upon the best terms possible, the property, when purchased, to be sold on joint account; and the property was then purchased by one of the parties on his individual account, and the other party was notified thereof and requested to pay half of the purchase money if he wanted to be a half-partner, and this proposition was not accepted. *Held:* That a contract of partnership was not created.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this cause was filed by the Savannah Rail and Equipment Company against M. Sabel & Sons, and prayed that complainants and defendants be decreed to be partners, and that defendants be required to account to complainants for one-half of the profits arising from the sale of the engines mentioned in the bill. The opinion shows the facts alleged in the bill.

A motion to dismiss the bill for want of equity was overruled, and defendants appeal.

[Sabel & Sons v. Savannah Rail & Equipment Company.]

GRAHAM & STEINER, for appellants, in support of the proposition that the allegations of the bill did not show that the parties were partners, cited 1 Bates on Partn, §§ 17, 29, 78, 89; *Reed v. Meagher*, 9 L. R. A., 455; *Baldwin v. Borrows*, 47 N. Y. 199; *Clark v. Reed*, 11 Pick. 446; *Chandler v. Brainerd*, 14 Pick. 285; 17 Am. & Eng. Enc. of Law, 832-845, 873 *et seq., Latta v. Kilbourn*, 150 U. S. 546; *Rice v. Shuman*, 43 Pa. St. 37; *Chisholm v. Cowles*, 42 Ala. 179; *Heckert v. Fegely*, 6 Watts & Sergt. 139.

WATTS, TROY & CAFFEY and J. J. WILLETT, *contra*, cited *House v. Patterson*, 53 Ala. 205; *McCrary v. Slaughter*, 58 Ala. 230; *Causler v. Wharton*, 62 Ala. 358; *Couch v. Woodruff*, 63 Ala. 466; *Autrey v. Frieze*, 59 Ala. 587.

TYSON, J.—The important question presented is whether the agreement shown by the bill constituted complainants and respondents partners. It is made to appear that respondents called the complainants' attention to the possibility of purchasing on very favorable terms seventeen second-hand narrow gauge locomotives from the Plant System, and thereupon an agreement was made to purchase the engines and whichever party, complainants or respondents, should have the opportunity to buy would do so "upon the best terms possible," and when purchased, the engines should be sold on joint account. It further appears that respondents did buy, but it does not appear that the purchase was made on joint account. After the purchase, complainants, without knowing the terms of the contract of purchase, wrote the respondents, saying: "We had an agreement with you to purchase these locomotives on joint account. Please let us know what you have done in the matter." To this the respondents replied: "We have bought the seventeen narrow gauge locomotives from the Plant System for $18,000 as they are. As we stated to you that we would consider you in the deal, if you desire to be half partners of this material, send us your check for $9,000 and we will consider you in on joint account." It does not appear

what if any reply was made to this letter. It must be inferred that complainants made no reply or declined the offer. Complainants allege that they afterwards discovered that respondents bought the engines for $17,000 without paying any cash except as the engines were sold by them, and that they received $10,000 profit out of the transaction.

The purpose of the bill is to make the respondents, as partners, account to complainants for these profits. It would seem that from complainants' refusal to reply to the respondents' letter, although the latter may have stated the trade with the Plant System differently from that actually made, the complainants did not consider themselves bound by the dealing of its alleged partners, conceding that there may be a valid partnership between the two concerns, unless the terms of the trade were favorable. This is not the way partners deal. When a partnership transaction is made, partners are absolutely bound thereby—there is no discretion about participating. The respondents' letter also plainly indicated that they did not consider the complainants concerned in the purchase, until they consented to be bound. Here, then, we have the interpretation of the contract by both parties concerned, each indicating to the other and each acquiescing in the view, that there was a mere agreement relating to the *future* and not an actual partnership. And when we look at the nature of the agreement as detailed in the bill, we see it could mean nothing else. There was nothing contributed, nothing done at the making of the agreement, except to stipulate that the parties, acting separately, as occasion might offer, would *buy* (if possible) the engines on "the best terms possible," and that *when* purchased *on those terms*, as the complainants insist, and not otherwise, they would be partnership property and be sold as such. Who was to say and when, that *"the best terms possible"* had been made? The agreement was not that the purchase should be made at all events, or at the discretion of either party or by their joint action. But, as we have said, each of the partners was to act separately and thus on individual account until the

other party acceded to the transaction. Thus it is made evident from the conduct of the parties and the agreement itself, that there was no actual partnership. To constitute a partnership there must be a "valid agreement to enter into partnership; and this contract must be executed."—Parsons on Partn. p. 6. Unless something is done, or unless the agreement from its nature operates *in presenti,* the contract is executory and either party may decline to carry it out, though liable it may be to a bill for specific performance or for damages at law in proper cases.—22 Am. & Eng. Ency. Law, (2d ed.), 52 and note 2; *Reed v. Meagher,* 9 L. R. A., 455, 460; *Latta v. Kilbourn,* 150 U. S. 546.

We feel constrained to hold that the facts alleged in the bill do not show a partnership, and that the motion to dismiss the bill for want of equity should have been granted. In conformity with this conclusion, a decree will be here entered reversing the decree below and dismissing the bill.

Reveresd and rendered.